UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SANDRA MADDOX and TOMETTA            REPORT AND
MADDOX HOLLEY, on behalf of themselves   RECOMMENDATION
and all others similarly situated,
                                      15-CV-01053(RJA)(JJM)
                    Plaintiffs,
v.

THE BANK OF NEW YORK MELLON
TRUST COMPANY,

                    Defendant.
_____

        By Text Order dated September 2, 2016 [28],[1] District Judge Richard J. Arcara referred this action to me for supervision of pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions. Before me is the motion by defendant The Bank of New York Mellon Trust Company, N.A. ("BNYM") to dismiss the plaintiffs' Complaint for lack of subject matter jurisdiction [34]. Oral argument was held on January 23, 2017 [44]. For the following reasons, I recommend that the motion be denied, but that the denial be certified for interlocutory review pursuant to 28 U.S.C. §1292(b).

## BACKGROUND

        Plaintiffs commenced this action on December 15, 2015, seeking individual and class relief from BNYM pursuant to New York Real Property Law ("RPL") §275(1) and Real Property Actions and Proceedings Law ("RPAPL") §1921(1), based upon BNYM's alleged failure to timely file a satisfaction of plaintiffs' mortgage loan. Complaint [1]. Both statutes contain the following provision: "Failure by a mortgagee to present a certificate of discharge for

---

[1]     Bracketed references are to CM/ECF docket entries.

recording shall result in the mortgagee being liable to the mortgagor in the amount of five hundred dollars if he or she fails to present such certificate within thirty days [after payment] . . . in the amount of one thousand dollars if he or she fails to present a certificate of discharge for recording within sixty days and . . . in the amount of one thousand five hundred dollars if he or she fails to present a certificate of discharge for recording within ninety days."

Plaintiffs allege that they were the owners of real property located at 149 Hampshire Street in the City of Buffalo, encumbered by a mortgage for which BNYM was the mortgagee (Complaint [1], ¶10), that the mortgage was paid off on October 5, 2014 (id., ¶18), and that a satisfaction of mortgage had not been filed at the time the action was commenced 2014 (id., ¶19).  Plaintiffs also seek to represent a class consisting of "all mortgagors with respect to mortgages for which Defendant was a mortgagee where: (a) the mortgage was secured by real property located in the State of New York; (b) all amounts due with respect to the mortgage were paid; and (c) during the period beginning six years prior to the filing of this action Defendant failed to present for recording a certificate of discharge, satisfaction or release within thirty (30) days to the recording office of the county where the mortgage was recorded" (id., ¶24).  Plaintiffs allege that "[a]ll members of the proposed Class have been subject to and affected by a uniform course of conduct by Defendant in that each made all payments due on the mortgage long, but Defendant failed to timely record a release/satisfaction of mortgage with the county clerk or recorder's office" (id., ¶28).

BNYM responds that it acted with respect to plaintiffs' mortgage "solely in its capacity as Trustee for holders of Mortgage Asset-Backed Pass Through Certificates Series 2006-RP4" (Lucas affidavit [35], ¶1), that the plaintiffs' mortgage was paid off on October 30,

2014 (id., ¶7), and that a satisfaction of mortgage was recorded on September 22, 2015, three months prior to the commencement of this action (id., ¶8).

Plaintiffs base subject matter jurisdiction on 28 U.S.C. §1332(d),[2] alleging that "[t]his action is between citizens of different states. Minimal diversity exists, a class action has been pled and there are more than 100 members of the Class, and the amount in controversy is in excess of $5 million, exclusive of interest and costs". Complaint [1], ¶5.[3]

In moving to dismiss the Complaint, BNYM advances two separate arguments. It first argues that "[p]laintiffs suffered no actual damages in relation to the alleged failure to record the Satisfaction. As a result, Plaintiffs failed to plead a concrete harm and lack Article III standing". BNYM's Memorandum of Law [37], pp. 7-8 of 10 (citing Spokeo, Inc. v. Robins, ___U.S.___, 136 S. Ct. 1540 (2016) and Nicklaw v. Citimortgage, Inc., 839 F.3d 998 (11th Cir. 2016)).

BNYM next argues that "even if Plaintiffs had Article III standing, they would only have standing to sue [BNYM] in its capacity as the trustee for the specific trust that held Plaintiffs' loan . . . . Given these limitations on Plaintiffs' standing to sue, even if the class were certified in this case, the class's damages cannot meet the $5 million minimum amount in controversy required by 28 U.S.C. §1332(d) . The most that any single putative plaintiff could recover under the Satisfaction Statutes is $1,500 . . . . The only loans that could possibly

---

[2] "The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which -- any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §1332(d)(2)(A).

[3] The parties concede that BNYM is a citizen of New York, and plaintiff Holley claims that she is a resident of Georgia. Holley declaration [41-1], ¶¶9-12. However, "for purposes of diversity jurisdiction residence and citizenship are not synonymous". Held v. Silver, 2013 WL 5346508, *1 (D. Conn. 2013). Therefore, at some point plaintiffs will need to identify a class member who is a citizen of a state other than New York.

implicate the Satisfaction Statutes in Plaintiffs' trust series are loans that have been paid off, and only 310 loans in Mortgage Asset-Backed Pass Through Certificates Series 2006-RP4 have been paid off. Thus, even if every one of those 310 loans were subject to New York's Satisfactions Statutes and were not timely recorded . . . class damages would only reach $465,000 - an amount in controversy that is far below the $5 million threshold." BNYM's Memorandum of Law [37], pp. 8-9 of 10.

Each of these arguments will be addressed.

## ANALYSIS

### A. Article III Standing

In two Decisions and Orders issued last year,[4] I analyzed the question of whether a violation of RPL §275(1) and RPAPL §1921 confers Article III standing, and concluded that it does. I incorporate that reasoning here, without the need for express repetition.

However, I recognize that the question is extremely close. For example, in Nicklaw, decided October 6, 2016, the 11th Circuit concluded that a violation of these statutes does *not* confer Article III standing. Although "decisions by other circuit courts are obviously not binding precedent here", Deskovic v. City of Peekskill, 894 F. Supp. 2d 443, 471 (S.D.N.Y. 2012), the Second Circuit cited Nicklaw with approval in Strubel v. Comenity Bank, 842 F.3d 181 (2d Cir. 2016), a case not involving these statutes: "Our analysis comports with the reasoning of our sister circuits following Spokeo. *See, e.g.*, Nicklaw . . . (holding that violation of statutory requirement that defendant record satisfaction of mortgage within certain time did

---

[4]   Zink v. First Niagara Bank, N.A., 13-CV-1076, July 1, 2016 Decision and Order [119] (___F. Supp.3d___, 2016 WL 3950957); December 29, 2016 Decision and Order [134] (2016 WL 7473278).

not manifest concrete injury where suit was brought after satisfaction was recorded and did not allege financial loss or injury to credit)". 842 F.3d at 194, n. 15.

Strubel's citation to Nicklaw was not integral to its decision, and "language unnecessary to the Court's decision cannot be considered binding authority", Federal Election Commission v. Wisconsin Right To Life, Inc., 551 U.S. 449, 476, n. 8 (2007) - particularly since the citation appears in a footnote, which is "the lowest form of dicta". United States v. Bahadar, 954 F.2d 821, 825 (2d Cir. 1992).

Without ignoring the potential significance of Strubel's footnote 15, I also take note of Strubel's footnote 8: "Although not cited in the majority opinion in Spokeo, Havens Realty Corporation v. Coleman, 455 U.S. 363, 373-74 (1982), similarly concluded that a 'tester' who approached a real estate agent expecting to receive false information in violation of the Fair Housing Act satisfactorily demonstrated injury in fact although the tester had no intent to buy or rent a home." 842 F.3d at 190, n. 8. As I stated in Zink, "[i]t would appear to me that plaintiff Zink's injury is no more ephemeral than that of the testers in Havens". 2016 WL 3950957, *5; *see also* Bellino v. JPMorgan Chase Bank, N.A., 2016 WL 5173392, *6 (S.D.N.Y. 2016) (*citing* this statement in Zink with approval).

While I recognized in Zink that "the Second Circuit's guidance would be helpful" (2016 WL 7473278, *3), I concluded in that case that an interlocutory appeal would not "materially advance the termination of the litigation" as required by 28 U.S.C. §1292(b), since the settlement of that action was unopposed. Id. Here, by contrast, issue of standing is hotly contested, not only by the parties to this action, but by courts in general. Just two weeks ago, the court in Bellino certified for interlocutory review the question of whether a violation of RPL §275 and RPAPL §1921 confers Article III standing, finding "that there are substantial grounds

for difference of opinion on the question of whether the statutory violation in question is sufficient to establish standing", and that "[a] reversal on the question of standing would materially advance the termination of litigation because reversal could result in dismissal of the entire action in Defendant's favor". Bellino v. JPMorgan Chase Bank, N.A., 2017 WL 129021, **3, 4 (S.D.N.Y. 2017).[5] This court should do likewise.

**B. 28 U.S.C. §1332(d)**

In arguing that the proposed class cannot possibly meet the $5 million amount in controversy required by 28 U.S.C. §1332(d), BNYM argues that plaintiffs fail "to allege any relationship with the incorrectly named The Bank of New York Mellon Trust Company, National Association, a legal entity that is *separate and distinct* from BNYM as Trustee". BNYM's Reply Memorandum [42], p. 6 of 7 (emphasis added).

However, it is "settled New York law that . . . there is no separate juristic entity of trustee". In re Weinberg, 1998 N.Y. Misc. LEXIS 742, *19 (Surr. Ct. 1998). Therefore, "a proceeding against a trustee in his representative capacity is in fact a proceeding against the trustee personally". Id.; *see also* Vass v. Conron Bros. Co., 59 F.2d 969, 970 (2d Cir. 1932) ("[u]nder the law of New York no action may be maintained against a trustee as such, any more than against a director, a freight agent, a lawyer, or a jockey, as such; the law of that state does not apparently recognize multiple personalities").

While BNYM's alleged failure to timely file a satisfaction of mortgage for plaintiffs may have been with regard to a particular trust, paragraph 28 of the Complaint alleges

---

[5] Although plaintiff Holley alleges that the delay in filing the satisfaction of mortgage "caused me great stress, mental anguish, anxiety, and distress" (Holley declaration [41-1], ¶8), that allegation is not contained in the Complaint. Moreover, even if the Complaint could be amended as to her, it is extremely unlikely that such an allegation would be typical of the class.

similar conduct with respect to all members of the proposed class, whether or not in connection with a trust.  "[T]he plaintiffs' claims need not be identical to those of the class; typicality will be satisfied so long as the named representatives' claims share the same essential characteristics as the claims of the class at large."  Newberg on Class Actions §3:29 (5th ed.)  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993).

Therefore, while it is not yet clear whether the $5 million "amount in controversy" requirement of 28 U.S.C. §1332(d) can be satisfied, BNYM has failed to demonstrate as a matter of law that it cannot.

**CONCLUSION**

For these reasons, I recommend that BNYM's motion to dismiss [34] be denied, but that the question of whether plaintiffs have Article III standing be certified for interlocutory review pursuant to 28 U.S.C. §1292(b).

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by February 13, 2017.  Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).  Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first

instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: January 30, 2017

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge