**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

---

SANDRA MADDOX and TOMETTA MADDOX
HOLLEY, on behalf of themselves and
all others similarly situated,

                    15-CV-01053-RJA-JJM

        Plaintiffs,             **DECISION AND ORDER**

        v.

THE BANK OF NEW YORK MELLON
TRUST CO.,

        Defendant.

---

This putative class action is before the Court on both parties' objections to Magistrate Judge Jeremiah J. McCarthy's Report and Recommendation. *See* Docket No. 45. Judge McCarthy recommends denying Defendant Bank of New York Mellon Trust Company's (BONY Mellon) motion to dismiss for lack of subject-matter jurisdiction, but Judge McCarthy recommends certifying part of that denial for interlocutory review pursuant to 28 U.S.C. § 1292(b). For the reasons stated below, the Court adopts Judge McCarthy's Report and Recommendation in its entirety.

**BACKGROUND**

The Court assumes familiarity with this case's facts and procedural history. In brief, the Plaintiffs allege that, although they have paid off their mortgage loan, BONY Mellon failed to record a satisfaction of mortgage certificate with the Erie County Clerk's Office. The Plaintiffs claim that BONY Mellon's failure to do so violates New York Real Property Actions Law § 1921(1) and New York Real Property Law § 275(1) ("the

1

satisfaction statutes"), both of which impose penalties up to $1,500, on a strict liability basis, if a mortgagee fails to timely record a certificate of discharge.

After the Court referred this case to Judge McCarthy pursuant to 28 U.S.C. § 636(b)(1)(B), BONY Mellon filed a motion to dismiss for lack of subject-matter jurisdiction. Judge McCarthy, as noted, recommends denying that motion, but he also recommends certifying one of the issues raised in the motion—whether the Plaintiffs have suffered an injury-in-fact for purposes of Article III standing—for interlocutory review.

BONY Mellon objects to Judge McCarthy's recommendation to deny its motion to dismiss, and the Plaintiffs object to Judge McCarthy's recommendation to certify a question for interlocutory review. The Court reviews these objections *de novo.* 28 U.S.C. § 636(b)(1).

## DISCUSSION

### 1. BONY Mellon's motion to dismiss for lack of Article III standing

#### A. The merits of BONY Mellon's motion to dismiss

The parties' primary dispute concerns whether the Plaintiffs have alleged an injury-in-fact sufficient to give rise to Article III standing. After reviewing the relevant law, Judge McCarthy concluded that the Plaintiffs have suffered a cognizable injury-in-fact, but he "recognize[d] that the question is extremely close" and "hotly contested, not only by the parties to this action, but by courts in general." Docket No. 45 at 4-5. Judge McCarthy therefore recommended that the Court certify for interlocutory review the question whether the Plaintiffs have suffered a cognizable injury for purposes of Article III standing.

The Court agrees with Judge McCarthy that this is a close question. On balance, and largely for the reasons stated in Judge McCarthy's Report and Recommendation, the

2

Court concludes that a violation of the satisfaction statutes creates a "risk of real harm," such that a violation of the statutes, without any further tangible harm, gives rise to an Article III injury-in-fact. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

The question in a case like this one—where the plaintiff has alleged only a bare procedural violation—is whether that violation "present[s] a material risk of harm to the underlying concrete interest [the legislature] sought to protect." *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 80-81 (2d Cir. 2017).[1] Applying that standard here, the Court can "reasonably assume" that a violation of the satisfaction statutes "raise[s] a sufficient degree of real risk" to a concrete interest, such that a person aggrieved by such a violation has suffered a cognizable injury-in-fact. *Strubel v. Comenity Bank*, 842 F.3d 181, 193 (2d Cir. 2016) (applying these standards to various violations of the Truth In Lending Act). Specifically, it is reasonable to assume that a failure to record a satisfaction of mortgage clouds the title to a person's real property by making it appear that unencumbered property is, in fact, encumbered, thereby creating barriers to selling the property. The failure to record a satisfaction also creates the appearance that a person's mortgage loan—one of "the biggest debt[s] many people ever take on in their lives"—has not yet been paid in full. *Nicklaw v. CitiMortgage*, 855 F.3d 1265, 1273 (11th Cir. 2017) (Martin, J., dissenting from the denial of rehearing en banc). In other words, to everyone but the property owner, the "mortgage[] [would] appear[] not to have been satisfied," which, the Court can reasonably assume, could cause the property owner harm

---

[1] Although *Spokeo* and the Second Circuit's decisions in *Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 1996), and *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76 (2d Cir. 2017), concerned violations of federal law, a number of courts have found—and this Court agrees—that "a state statute, like a federal statute, may create a legal right, the invasion of which may constitute a concrete injury for Article III purposes." *Jaffe v. Bank of Am., N.A.*, 197 F. Supp. 3d 523, 528 (S.D.N.Y. 2016).

3

"if they had, for example, tried to sell or encumber the subject property, or tried to finance another property and been subjected to a credit check." *Jaffe v. Bank of Am., N.A.*, 197 F. Supp. 3d 523, 528 (S.D.N.Y. 2016).

To be sure, this risked injury may be "ephemeral," and many property owners aggrieved by a violation of the satisfaction statutes may never suffer any tangible injury. *Zink v. First Niagara Bank, N.A.*, 206 F. Supp. 3d 810, 817 (W.D.N.Y. 2016). But "intangible injuries can . . . be concrete," and if those injuries are particularized, they give rise to an injury-in-fact. *Spokeo*, 136 S. Ct. at 1549. *See also Jaffe*, 197 F. Supp. 3d at 528 ("Whether such harm actually *was* realized is of no moment, because a plaintiff 'need not allege any *additional* harm' beyond the violation of the statutory right.") (quoting *Spokeo*, 136 S. Ct. at 1549) (first emphasis added in *Jaffe*; second emphasis in *Spokeo*). In short, it appears that a violation of the "statutorily mandated procedures" in the satisfaction statutes "entail[s] the concrete injury necessary for standing," regardless of whether the Plaintiffs have "'allege[d] any *additional* harm beyond the one [the New York legislature] has identified.'" *Strubel*, 842 F.3d at 189 (quoting *Spokeo*, 136 S. Ct. at 1549) (brackets in *Strubel* omitted; emphasis in *Spokeo*). Thus, the Court adopts Judge McCarthy's recommendation to deny BONY Mellon's motion to dismiss for lack of standing.

### B. Whether the Court should certify this order for interlocutory appeal

A district court may certify an order for interlocutory review when the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Section 1292(b), then, establishes four requirements for certification: First, "the [contemplated] appeal must concern a question 'of law'"; second, "that question must be one that is 'controlling'"; third, "that controlling question of law must be one 'as to which there is substantial ground for difference of opinion'"; and fourth, "an immediate appeal from the order may materially advance the ultimate determination of the litigation." *Casey v. Long Island R.R.*, 406 F.3d 142, 146 (2d Cir. 2005); 28 U.S.C. § 1292(b). "A party seeking certification has the burden to establish" that § 1292(b)'s requirements are met, but even if the party meets its burden, given the longstanding federal policy against interlocutory appeals, "district courts should only grant leave for an interlocutory appeal after 'exercising great care.'" *Stratton v. Wallace*, 11-CV-74-A, 2016 WL 3552147, at *2 (W.D.N.Y. Apr. 5, 2016) (quoting *Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992); brackets in *Stratton* omitted).

Neither party contests whether the question Judge McCarthy recommends certifying concerns a "controlling question of law." 28 U.S.C. § 1292(b). The question whether a violation of the satisfaction statutes constitutes an Article III injury-in-fact is a "pure question of law that the reviewing court could decide quickly and cleanly without having to study the record," and reversal of this Court's decision "would terminate th[is] action." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (quotation marks and citations omitted).

Likewise, neither party contests whether an immediate appeal "may materially advance the ultimate determination of the litigation." 28 U.S.C. § 1292(b). If this order is reversed, the case will be dismissed. And if this order is affirmed, although the case will not be dismissed, the parties and the Court will not have to concern themselves with a

5

significant threshold question that would hover over this case, possibly affecting discovery and any settlement discussions. *See Zink*, 206 F. Supp. 3d at 817-18 (recognizing that the standing question at issue in this case, among other issues, "warrants [a] settlement agreement's significant reduction from full value of the class members' claims"). The Court therefore finds that each of these conditions has been satisfied. Thus, the sole question under § 1292(b) is whether there is "substantial ground for difference of opinion."

"[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996). "Rather, it is the duty of the district judge to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *Id.* (quotation marks and ellipsis omitted; emphasis in original). In making this determination, "decisions from other circuits" may help show that "a substantial basis exists for difference of opinion." *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784(WHP), 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013).[2]

A review of the cases addressing the question at issue here convinces the Court that there is "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). On the

---

[2] The Plaintiffs cite a series of district court cases for the proposition that "[d]isagreement among courts outside the Second Circuit does not establish a substantial ground." Docket No. 47 at 2 (quotation marks omitted). Other district courts, however, have concluded that a district court *may* look to out-of-circuit precedent when deciding whether to certify an order for interlocutory review. *See, e.g.*, *APCC Svcs., Inc. v. Sprint Commc'ns Co., L.P.*, 297 F. Supp. 2d 90, 97 (D.D.C. 2003) ("A substantial ground for difference of opinion is often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits.") The Court declines to follow the line of cases cited in the Plaintiffs' objections because, based on the Court's research, the proposition for which those cases are cited—that a § 1292(b) certification can only be based on in-circuit disagreement—cannot be traced to any Second Circuit case law. For that reason, and because nothing in § 1292(b)'s text suggests that a district court is limited to examining in-circuit decisions, the Court does not believe it is restricted to examining in-circuit case law in deciding whether to certify this order for interlocutory review.

6

one hand, the Eleventh Circuit has held that a bare violation of New York's satisfaction statutes does not create a cognizable Article III injury-in-fact. *See Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016) (*Nicklaw I*). *See also Nicklaw v. CitiMortgage, Inc.*, 855 F.3d 1265 (11th Cir. 2017) (*Nicklaw II*) (opinions respecting, and dissenting from, the denial of rehearing en banc). And, as Judge McCarthy noted, the Second Circuit has suggested in a footnote that the Eleventh Circuit's decision correctly states the law in the Second Circuit. *See Strubel*, 842 F.3d at 194 n.15.

On the other hand, however, at least five district courts in the Second Circuit (not including this Court) have reached the contrary conclusion. *See Weldon v. MTAG Svcs., LLC*, Civil Action No. 3:16-cv-783(JCH), 2017 WL 776648 (D. Conn. Feb. 28, 2017) (interpreting Connecticut's substantively-identical satisfaction statute); *Villanueva v. Wells Fargo Bank, N.A.*, 13-CV-5429(CS)(LMS) (S.D.N.Y. Jan. 25, 2017) (concluding that violations of satisfaction statutes create Article III standing and declining to adopt Report and Recommendation that reached contrary conclusion);[3] *Zink*, 206 F. Supp. 3d 817 (observing that, "under the present state of the law, the scales tip slightly (but only slightly) in favor of finding that plaintiff has Article III standing"); *Bellino v. JPMorgan Chase Bank, N.A.*, 209 F. Supp. 3d 601 (S.D.N.Y. 2016), *interlocutory appeal certified*, 2017 WL 129021 (Jan. 13, 2017), *and appeal withdrawn*, Docket No. 54-1 at 2; *Jaffe*, 197 F. Supp. 3d at 528. There is, therefore, clearly "conflicting authority on the issue" presented by BONY Mellon's standing argument. *Capital Records, LLC*, 972 F. Supp. 2d at 551.

---

[3] The district court's decision in *Villanueva* does not appear to have been electronically reported, but a copy of the decision is available at Docket No. 47-2.

The Court recognizes that certification is not warranted simply because courts have given different answers to the same question. But "the strength of the arguments," *Flor*, 79 F.3d at 284, in *Nicklaw* and *Strubel* demonstrates that there is "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). As *Nicklaw* observed, and as *Strubel* suggests, it is far from clear that the risk of harm from a violation of the satisfaction statutes is sufficiently concrete where, as here, the property at issue was sold and a satisfaction was recorded before any lawsuit was filed. *See* Docket No. 35 ¶¶ 6-8; *Nicklaw*, 839 F.3d at 1003 (holding that plaintiff had not been injured because, among other reasons, he "did not file th[e] action until more than two years *after* [defendant] recorded the satisfaction of mortgage") (emphasis in original); *Nicklaw II*, 855 F.3d at 1267 (Pryor and Marcus JJ., respecting the denial of rehearing en banc) (arguing that Supreme Court case law does not support the proposition that "a plaintiff has standing to sue because he faced a risk of harm that never materialized and has since disappeared"). *Cf. Strubel*, 842 F.3d at 194 ("It would be more than curious to conclude that a consumer sustains real injury to concrete TILA interests simply from a creditor's failure to advise of a reporting obligation that, in the end, the creditor honors.") In other words, there is a persuasive argument suggesting that this Court's decision is incorrect: No matter the risk of injury that arises from a violation of the satisfaction statutes, a property owner cannot claim to have Article III standing if the possibility for injury came and went without incident.

In short, the Second Circuit's decision in *Strubel*, the Eleventh Circuit's decision in *Nicklaw*, and the growing number of district court cases in the Second Circuit "create just enough divergence and doubt to warrant certification." *Bellino v. JPMorgan Chase Bank, N.A. (Bellino II)*, No. 14-cv-3139 (NSR), 2017 WL 129021, at *3 (S.D.N.Y. Jan. 13, 2017).

And because that "divergence and doubt" concerns such a fundamental question as whether this Court has subject-matter jurisdiction, it would be a tremendous waste to allow this case and class proceedings to continue for several more years before the parties could obtain a final judgment from which they could appeal. Thus, after careful consideration, and being sensitive to the historic federal policy against piecemeal appeals, the Court concludes that certification is appropriate in this case.

### 2. BONY Mellon's motion to dismiss for lack of subject-matter jurisdiction under 28 U.S.C. § 1332(d)

BONY Mellon also moves to dismiss the complaint for lack of subject-matter jurisdiction, arguing that, "[e]ven if Plaintiffs had Article III standing, they would only have standing to sue BNY Mellon as Trustee, in its capacity as the trustee for the *specific* trust that held Plaintiffs' loan." Docket No. 37 at 8. BONY Mellon further argues that the Plaintiffs have not "allege[d] any relationship with the incorrectly named The Bank of New York Mellon Trust Company, National Association, a legal entity that is separate and distinct from BNYM as Trustee." *Id.* at 9. This matters, BONY Mellon claims, because BONY Mellon as Trustee's "sole connection to Plaintiffs was in its limited capacity as a trustee for the trust series, Mortgage Asset-Backed Pass Through Certificates Series 2006-RP3, which Plaintiffs concede owned and held their mortgage loan." *Id.* Thus, BONY Mellon argues that "any and all alleged harm or injury suffered by Plaintiffs is traceable only to BNYM as Trustee, and solely in its capacity for that specific trust." *Id.* Because the most the Plaintiffs could recover for a violation of the satisfaction statutes is $1,500, and because, BONY Mellon affirms, "only 310 loans in Mortgage Asset-Backed Pass Through Certificates Series 2006-RP4 have been paid off," the most a class in this

9

case could conceivably recover is $465,000—far less than the $5 million amount-in-controversy required by § 1332(d). *Id.*

Judge McCarthy recommends denying this motion because "it is settled New York law that there is no separate juristic entity of trustee" and because, as a result, "a proceeding against a trustee in his representative capacity is in fact a proceeding against the trustee personally." Docket No. 45 at 6 (quotation mark and ellipsis omitted). Judge McCarthy further observes that, "[w]hile BNYM's alleged failure to timely file a satisfaction of mortgage for plaintiffs may have been with regard to a particular trust . . . the Complaint alleges similar conduct with respect to all members of the proposed class, whether or not in connection with a trust." *Id.* at 6-7. Because Rule 23's typicality requirement "'is usually met irrespective of minor variation in the fact patterns underlying individual claims,'" Judge McCarthy ultimately concluded that, "while it is not yet clear" whether § 1332(d)'s amount-in-controversy requirement has been satisfied, BONY Mellon "has failed to demonstrate as a matter of law that it cannot." *Id.* at 7 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993)).

Upon *de novo* review, and for the reasons stated in Judge McCarthy's Report and Recommendation, the Court adopts Judge McCarthy's recommendation to deny BONY Mellon's motion to dismiss for lack of subject-matter jurisdiction under § 1332(d). Given the procedural stage of this case, as well as the complaint's class action allegations, the Court agrees with Judge McCarthy that BONY Mellon "has failed to demonstrate as a matter of law" that § 1332(d)'s amount-in-controversy requirement has not been adequately alleged. *Id.*

## CONCLUSION

For the reasons stated above, the Court adopts Judge McCarthy's Report and Recommendation (Docket No. 45) in full. The Court therefore denies BONY Mellon's motion to dismiss (Docket No. 34), and the Court certifies this order for interlocutory review, but only as the order pertains to the question whether a bare violation of New York's satisfaction statutes creates a cognizable injury-in-fact for purposes of Article III standing.

This case is stayed pending the outcome of proceedings before the Second Circuit. The parties shall notify the Court when the Second Circuit either (1) declines to accept this order for interlocutory review; or (2) decides the merits of the question certified for interlocutory review.

**SO ORDERED.**

Dated: July 24, 2018            _s/Richard J. Arcara_
    Buffalo, New York        HONORABLE RICHARD J. ARCARA
                                        UNITED STATES DISTRICT JUDGE